UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>  - against -<br><br>JAMES E. WRIGHT,<br><br>                Defendant. | **MEMORANDUM OF DECISION AND ORDER**<br><br>10-CR-0504 (ADS) |

----------------------------------------------------------X

**A P P E A R A N C E S :**

    **LORETTA E. LYNCH**
    United States Attorney for the
    Eastern District of New York
    610 Federal Plaza
    Central Islip, NY 11722
      By:    Christopher Charles Caffarone,
              Assistant U.S. Attorney

    **LAW OFFICES OF GLENN A. OBEDIN**
    Attorneys for the Defendant
    The Courthouse Corporate Center
    320 Carlton Avenue, Suite 4200
    Central Islip, NY 11722
      By:    Glenn A. Obedin, Esq.,
              Of Counsel

**SPATT, District Judge.**

The defendant in this case, James E. Wright, filed a motion to suppress any evidence obtained by government agents from the search of his residence and certain post-arrest statements obtained by government agents. In a prior decision, dated April 2, 2012, the Court denied the motion to suppress the post-arrest statements obtained by the government agents. With regard to the motion

1

to suppress any evidence obtained by government agents from the search of the defendant's residence, the Court determined that a suppression hearing was necessary.

## I. THE HEARING

The suppression hearing was held on April 20, 2012, and April 23, 2012.

### A. The Government's Case

The first witness was Carl Spears, a cooperating witness. After being subpoenaed, Spears testified under the protection of a letter from the Government to his attorney, dated April 16, 2012 (Gov't Ex. 3500-CS-2); which reads as follows:

> Dear Mr. Tomao:
>
> As we have discussed, your client, Carl Spears, has been subpoenaed to appear and give testimony at a suppression hearing in United States v. James Wright, 10-CR-504 (ADS), in the Eastern District of New York. You have indicated that Mr. Spears will refuse to testify on the basis of his privilege against self-incrimination unless he is given assurances that the testimony and/or information provided by him will not be used against him.
>
> As we have discussed, your client is currently a target of an ongoing Grand Jury investigation. As such, it is hereby agreed that regarding his testimony at a suppression hearing in United States v. James Wright, 10-CR-504 (ADS), no testimony provided by Carl Spears or any information directly or indirectly derived from such testimony will be used against him by the Office in any criminal case, except a prosecution for perjury, giving a false statement, obstruction of justice, or contempt of court.

On May 17, 2008, the critical date in this hearing, Spears was arrested and searched. He had keys on his person to apartment E-81 at 1 Vanderbilt Drive in Mineola, New York. Spears told the detective questioning him that this was the key to the apartment of the defendant James E. Wright ("the defendant" or "Wright") and that there were drugs in the apartment. Spears stated that the defendant gave him the key to the apartment to use and he stayed in the apartment on numerous

occasions.

Spears testified that in early February 2008, he was living in a shelter. In mid-February 2008, Spears met with the defendant's mother, and thereafter he met with the defendant himself. The defendant offered to allow Spears to stay at his apartment in Mineola. Spears then left the shelter and started living at Wright's apartment. He slept in the living room of the apartment for a week or two. At that time he did not have a key to the defendant's apartment. However, subsequently, Wright gave Spears a key to the apartment, and he also gave him the password to the alarm. It seems that the defendant used to lose his keys and when they needed to do "transactions", Spears had the key. The "transactions" were drug transactions for James Wright.

After the defendant gave him a key and the password to the Mineola apartment, Spears used the key to enter the apartment without Wright's presence "almost three to five times" between March of 2008 and May of 2008. When Spears went to the Wright apartment he always used the key given to him but did not have to use the password, because "it was off." (Tr. at 23).

Spears testified that he went to the defendant's apartment to get drugs so that he could make drug transactions. After doing a drug transaction, Spears returned to the defendant's apartment to "put the money there." (Tr. at 24). Between March and May 2008, Spears slept at the defendant's apartment in Mineola between five and ten times while the defendant was present in the apartment.

On May 17, 2008, Spears gave the Nassau Police a written statement, which is in evidence as Gov't Ex. 3500-CS-3. In this statement, Spears relates the following: "James had given me a key to his house so I could crash there or if he misplaced his key I would have it. I have slept at the house at least five times that I remember." Spears also stated that Wright gave him a password to the alarm system in the apartment.

On that same date, May 17, 2008, Carl Spears signed a Nassau County Police Department form entitled, "Consent Search of Premise". In this form, Spears stated that he was the "legal custodian" of apartment E81, at 1 Vanderbilt Drive, Mineola. Also, in this document form, Spears gave detectives of the Nassau County Police Department "permission to search the above mentioned premises." (Gov't Ex. 1). Spears expressly and voluntarily consented to the search of the Wright apartment by the Nassau Police Officers. He testified that he gave his consent freely and voluntarily and without any threat by the detectives.

The detectives drove with Spears to the apartment. On May 17, 2008, at about 9:11 pm, Spears used his key and opened the apartment door. The alarm went off. Spears had been present when the alarm was installed and he was given the password, "crossfire". Spears told the police officers the password was "crossfire" and the alarm was silenced. The word "crossfire" was also the name of the defendant's car.

On cross-examination, Spears admitted that there is "a couple of lies in that statement." (Tr. at 27). He was told by the Government attorneys that lying to the detectives was, in itself, a crime. However, Spears lied to the federal agents on several matters, not really relevant to the issues in this hearing.

Detective Patrick Carroll was in the Narcotics Squad of the Nassau County Police Department. In May of 2008, Carroll was assigned to the DEA Task Force. He had the dual role of an undercover agent making purchases of narcotics. Carroll had hundreds of hours of training by the DEA, the FBI and other drug trafficking agencies.

On May 17, 2008, he participated in the arrest of Carl Spears at a 7-Eleven on Hempstead Turnpike. The officers took Spears to the Narcotics Headquarters in Bethpage. He was debriefed

and given his Miranda rights. Spears agreed to answer some questions and to cooperate. Spears told the officers that there were "more drugs and guns and money at a stash house." (Tr. at 43). The stash house Spears referred to was apartment E-81 at Vanderbilt Drive in Mineola. Spears told them that this was the apartment of James Wright and he said there were drugs in that apartment. He also told them that he had a key to the apartment and that he lived there at certain times. Spears showed the officers the key to the Wright apartment on his key ring, which was in his possession. Wright had given him the key to the apartment. He stayed there several nights and slept on the couch, because "they had a business relationship." (Tr. at 44). Spears signed a statement in which he stated that he slept at the Wright apartment at least five times.

Spears consented to a search of the Wright apartment E-81, Vanderbilt Drive in Mineola and signed the written consent on May 17, 2008 at 9:11 pm. Thereafter, on May 17th, Carroll, three other detectives and Spears went to the Wright apartment. They used the key that Spears had provided for them. They opened the door to the apartment; stated "Police"; and turned on the lights. The alarm in the apartment went off and they used the password Spears had given them, the word "crossfire" to turn off the alarm.

When they entered the Wright apartment and turned the lights on, they saw a considerable amount of crack cocaine on the kitchen counter top. (Gov't Ex. 15). Also seized was some United States currency and a .22 caliber firearm. The apartment had an alarm system and Spears told him that the password was "crossfire". Introduced in evidence as Government's Exhibits 4, 5 and 7 were documents from Slomins' store, including contracts between Slomins and the defendant James Wright as the buyer for the installation of an alarm system at 1 Vanderbilt Drive in Mineola, with the code password as "crossfire". At this point the Government and the defense agreed to a

stipulation regarding Slomins' installation of the alarm system in the defendant's residence.

> MR. CAFFARONE: Thank you, your Honor.
>
> At this time the defense and the government have agreed to a stipulation regarding the Slomin's installer's - - what he would testify to. We're going to stipulate to these facts.
>
> What they would be would be the installer, when he went to install the alarm at the apartment that we've been discussing today, there were individuals that were installing blinds and there were at least two black males at the apartment, one of whom was the owner, and that the owner told the installer that the other black male that was there could know the password to the alarm.
>
> THE COURT: Is that right?
>
> MR. OBEDIN: Yes.
>
> MR. CAFFARONE: And other than that, then all the testimony regarding what the installer told Detective Carroll will be struck.
>
> THE COURT: The owner told the installer that the other black male what?
>
> MR. CARRARONE: Could know the password to the alarm.
>
> THE COURT: Okay. Is that stipulated?
>
> MR. OBEDIN: Yes, your Honor.

(Tr. at 62-63).

On cross-examination, Detective Carroll testified that when they entered the defendant's apartment with Spears, the alarm went off, and when the alarm was sounded, uniformed police officers arrived at the apartment. Spears gave Detective McLaughlin the password, "crossfire", which was punched into the alarm keypad several times. He learned that the word "crossfire" was actually the password to turn off the alarm if the alarm company called. He did not know if it was

6

also the password to punch into the alarm keypad.

Also, Detective Carroll testified that he knew that Carl Spears did not live in the apartment on Vanderbilt Drive – full time. Spears resided at 70-40 Parsons Boulevard in Queens with his grandmother for approximately four months, and prior to that time, he was in prison. However, Spears also told them that he stayed at Wright's apartment on a number of occasions and that he had a key to the apartment. Also, Slomins confirmed that crossfire was the "safe word" for the burglary alarm at the Wright apartment.

Detective Scott Bertini is in the Nassau County Police Department, narcotics vice division. On May 17, 2008, he participated in the arrest of Carl Spears. After he was arrested, Spears consented to the search of apartment E-81 at 1 Vanderbilt Drive in Mineola. Spears provided law enforcement with a key for the apartment. He told the officers that he had gotten the key from James Wright, who was the occupant of the apartment.

On May 17, 2008, Detective Bertini did go to the apartment that night with at least three other detectives and with Carl Spears. The key that Spears provided to them opened the apartment door. When he entered, Detective Bertini observed a white shopping bag that contained what appeared to be narcotics on the kitchen counter. To make sure no one else was in the apartment, he went into the bedroom. A sliding door in the bedroom closet was half open. There was a sum of money on the top shelf of the open closet. Right behind the stack of money was a black leather case that appeared to have "what looked like a small handgun in it." (Tr. at 81). Introduced in evidence were photographs of the stacks of money on the shelf (Gov't Ex. 9); the small handgun removed from the black case (Gov't Ex. 10); and the closet (Gov't Ex. 12). Also introduced was the handgun recovered with the black case and the ammunition inside the gun. (Gov't Ex. 14).

After they entered the apartment with the consent provided by Carl Spears, and after the drugs and the gun were recovered, there was communication from the detectives in the apartment to the Nassau County District Attorney's Office. At that time, the detectives requested a search warrant for the subject premises. At 11:46 pm, that request was denied by the Nassau County District Attorney's Office. This was after the detectives had entered the apartment with the consent and cooperation of Carl Spears.

On cross-examination, Detective Bertini testified that when Spears was arrested on May 17, 2008, there was a Property Bureau Evidence Invoice prepared which indicated that, recovered from Spears right sock was a piece of clear plastic containing crack cocaine. (Dft's Ex. 3500-CS-8). Also in evidence is a Nassau County Police Department Property Receipt for Carl Spears at 2137 hours on May 17, 2008. (Gov't Ex. 2). In that receipt Spears' address is listed as 157 Clinton Street, Roosevelt, New York 11575. It was noted that the Property Receipt does not mention that keys were taken from Spears. However, the Property Receipt for the defendant James Wright does state that "assorted keys" was taken from him on May 17, 2008 at the time of his search. (Gov't Ex. 6), by the same officer who performed the Spears search, on the same date.

However, on redirect examination, it was brought out that the Property Receipt showing no keys in the possession of Spears, was prepared after Spears had given the keys to the detectives who accompanied him to the Wright apartment. In this regard, the detectives and Spears left to go to the apartment with the keys at approximately 9:20 pm, some eleven minutes prior to the vouchering of Spears' property at 9:31 pm at the police headquarters. So that the detective who filled out the Spears' property receipt could not have seen the keys in the possession of Spears. In response, defendant's counsel elicited the testimony that Spears first arrived at police headquarters at 6:50 pm

8

and was strip searched and processed prior to the time he left with the detectives for the Wright apartment at 9:20 pm.

## II. DISCUSSION

In the prior April 2, 2012 decision of this Court in United States v. Wright, 2012 WL 1132421, it was held that: (1) the defendant's motion to suppress his post-arrest statements, was denied, and (2) the defendant's motion to suppress the evidence obtained from the search of his residence on May 17, 2008, required an evidentiary suppression hearing.

**A. As to the Issue of "Actual Authority" by Spears to Consent to the Search**

The search on May 17, 2008 was held by the Nassau County Police Department detectives without a warrant. A police search of a defendant's private premises without a warrant will not violate a defendant's Fourth Amendment rights if it is conducted with the consent of another person, who has the authority to consent by a sufficient relationship to the premises and to the lawful occupant of the premises.

The United States Supreme Court has given us the clear rule with regard to a police search of a defendant's premises without the consent of the defendant, but with the consent of another person with the "authority to consent."

In United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the test for "actual authority" was set forth:

> The rule is based on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the cohabitants has the right to permit inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

Id. at 171 n. 7, 94 S.Ct. 988.

In subsequent decisions by the Second Circuit, this "actual authority" by a third-party to permit access to another's residence was clarified and reinforced. In United States v. Davis, 967 F.2d 84, 87 (2d Cir. 1992), the Second Circuit stated that a third-party may validate a search by giving the authorities consent to search "if two prongs are present: first, the third party had access to the area searched, and, second, had either: (a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access." The permission to gain access may be express or implied. See United States v. Gradowski, 502 F.2d 563, 564 (2d Cir. 1974) (per curiam) (finding consent to search a car valid where the consenting party was in possession of car and keys); United States v. Buettner-Janusch, 646 F.2d 759, 765 (2d Cir. 1981) (finding consent valid where the consenting party was a co-worker who had been given keys to the area searched and had standing permission to use the premises).

Here, in the testimony at the hearing, the Government proved that Spears was a co-conspirator with Wright with regard to the possession and distribution of drugs; that Wright gave Spears a key to the subject apartment in Mineola; that Spears used the key to enter the apartment on a number of times prior to May 17, 2008; that Spears knew the password to turn off the alarm in the apartment; that Spears was present in the apartment when the alarm was installed, when Wright told the installer that "the other black male could know the password to the alarm;" and that prior to May 17, 2008, Spears had stayed and slept in the apartment on a number of occasions, sometimes without Wright being present.

A review of the testimony at the hearing reveals that, in support of the motion to suppress the evidence seized in the apartment, the defendant contends the following:

(1) The property invoice that detectives used to log in personal property seized for Spears did not contain an entry for "keys", while in contrast, the invoice of Wright's property did have an entry for "keys";

(2) The Government did not introduce any keys in evidence; and

(3) As to the alarm code, Spears only knew the word "crossfire" would shut off the alarm, after it sounded. As the defendant's counsel explained this point, Spears' password would only shut off the alarm after it sounded and "the Government would be stretching for the unreachable if it were to contend that Wright, with an apartment containing drugs, money and a firearm, gave Spears unrestricted permission to enter the apartment, knowing that each entry would trigger the alarm." (Dft's Post-Hearing Memorandum at 8).

The Government response to these arguments by the defendant is that: (1) the detectives and Spears left the police station for the Wright apartment, with the key to the apartment and entered the apartment, at approximately 9:11 pm, while the particular search of Spears' property was done by Police Officer Marinucci in the police station at approximately 9:21 pm, so that there could be no key in the inventory – it was on its way to the Wright apartment; (2) As to the contention that the key was not introduced in evidence, the Government responds that there is no such requirement in order for the Government to meet its burden. The Government is correct – there is no such requirement. The fact that Spears gave the detective the key to the Wright apartment was sufficiently established by the credible testimony of three Government witnesses, Carl Spears, Detective Patrick Carroll and Detective Scott Bertini. In the Court's view all these important facts – the key testimony, the password testimony and the person being in the apartment testimony – were all established.

Accordingly, the Court finds that the Government has established that Carl Spears possessed

the "actual authority" to consent to the search of the Wright apartment at 1 Vanderbilt Drive, apartment E-81, Mineola, New York on May 17, 2008.

**B. <u>As to the Issue of "Apparent Authority" by Spears to Consent to the Search</u>**

As stated in the Court's prior decision of April 2, 2012, "It is beyond dispute that, even if a person lacks actual authority to provide consent to search another's private premises, the consent may nevertheless validate the government search" if the person reasonably appeared to the police to possess authority to consent to the search. <u>United States v. McGee</u>, 564 F.3d 136, 139 (2d Cir. 2009). The rule as to "apparent authority" as stated previously, is as follows:

> The critical inquiry when the government relies on apparent authority is an objective one: "[W]ould the facts available to the officer at the time the consent is given warrant a person of reasonable caution in the belief that the consenting party had authority over the item to be searched? <u>United States v. James</u>, 353 F.3d 606, 615 (8th Cir. 2003). "The standard of reasonableness is governed by what the law-enforcement officers know, not what the consenting party knows." <u>Id</u>. In determining whether the agents' reliance on consent of a third party is reasonable, the rule "is not that they always be correct, but that they always be reasonable." <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 185, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

In this regard, namely, the issue of "apparent authority" critical factual issues concern whether Spears actually had a key to the subject apartment; was the key given to him by the defendant; and did Spears know the code to deactivate the burglar alarm. The cases corroborate these important factual components as to the doctrine of "apparent authority". Again as cited previously, there is substantial precedence as to the issue of the key, and also of prior living use in the apartment. The cases clearly set forth the applicable rule:

> <u>See</u>, e.g., <u>U.S. v. Waits</u>, 285 Fed App'x 465, 466 (9th Cir. 2008) ("We affirm the district court's denial of Wait's motion to suppress because Hernandez had apparent authority to consent to the

> warrantless entry and search. . . . Hernandez said he was Wait's roommate; gave the officers the impression that he had a key; brought the policemen to the door of the room; and knew that the door was unlocked."). See also United States v. Yarbrough, 852 F.2d 1522, 1534 (9th Cir. 1988) ("A party who has a key to the premises . . . can give a valid consent to search." (internal quotation omitted)); U.S. v. Garcia, No. 10 Cr. 176-2, 2010 WL 4736497, at *4 (N.D. Ill. Nov. 6, 2010) ("In determining if a person has apparent authority to consent to a search, law enforcement officers may consider a variety of factors, including whether the person consenting possesses a key to the home, lives at the residence, or performs household chores at the home."). Cf. Riley v. Grey, 674 F.2d 522 (6th Cir. 1982) (finding no apparent authority because even though the consenter had keys to the apartment, he did not come into possession of the keys until the night in question, he was not a regular visitor to the apartment, and he did not have permission to enter the apartment when the petitioner was not there).

Also, the Court notes its comments prior to the suppression hearing, namely, "however, if the CW did not have a key to the Subject Premises or the correct code to the burglar alarm, it would seriously undermine any appearance of apparent authority claimed by the Government agents." The defendant contends that, "it is unclear whether Spears had a key to Wright's apartment." Also, in this regard, the defendant's counsel states that "Spears did not possess a code to prevent the alarm from going off" and "Spears had been in the apartment only a few times and only at Wright's direction." Therefore, counsel asserts that "it was unreasonable for [detectives] of reasonable caution [to believe] that [Spears] had authority over the [apartment]." (Dft's Post Hearing Memorandum at 8, 9). The Court disagrees.

The Court finds that the evidence at the hearing clearly established that it was reasonable for the law enforcement officers to believe that Carl Spears possessed the authority to consent to a search of the Wright apartment. The evidence established that Spears told the detectives that there were drugs in the apartment and he provided them with a key to the apartment and a consent to

search the apartment. In addition, Spears told them he had slept in the apartment on several occasions and signed a written statement to that effect. Also, he told the detectives that the password for the alarm was "crossfire". Based on all this evidence, it was reasonable for the law enforcement officers to believe that Carl Spears possessed the authority to consent to a search of the apartment. Therefore, the evidence established that Spears possessed the "apparent authority" to consent to the search of the Wright apartment.

The "apparent authority" rule was more recently well-stated in United States v. King, 627 F.3d 641, 648 (7th Cir. 2010):

> The district judge concluded that Cabrera-Lopez had apparent authority to consent to the search. We agree. Cabrera-Lopez had keys to the restaurant and the code to deactivate the alarm. He also opened the restaurant alone, and it was a small establishment. Cabrera-Lopez's actions clearly justified the officers' belief that he had full control over the premises, including the authority to grant access to others. See United States v. Pineda-Buenaventura, 622 F.3d 761, 777 (7th Cir. 2010) (stating that officers have a duty to inquire further as to a third party's authority only "when the circumstances make the authority questionable in the first place"). And the fact that the officers knew that Cabrera-Lopez was not the owner does not invalidate his authority.

### III. CONCLUSION

The motion by the defendant James E. Wright for an order pursuant to Rule 12 suppressing any evidence obtained by law enforcement agents from the search of the residence located a 1 Vanderbilt Drive, Mineola, New York, on May 17, 2008, is denied.

**SO ORDERED.**

Dated: Central Islip, New York
July 19, 2012

                                        _____/s/ Arthur D. Spatt_____
                                                ARTHUR D. SPATT
                                           United States District Judge